### SOUTHERN HOME BUILDING & LOAN ASSOCIATION *v.* HOME INSURANCE COMPANY OF NEW ORLEANS, and *vice versa.*

*Atkinson, J.*—The evidence submitted to the jury by the plaintiff went no further than to establish the allegations contained in the declaration before it was amended, and this court having ruled upon a former writ of error that these allegations set forth no cause of action, the court did not err in granting a nonsuit.     *Judgment affirmed.*

*Cross-bill of exceptions dismissed.*

March 23, 1896.   Argued at the last term.     5

Action on insurance policy.   Before Judge MacDonell. City court of Savannah.   July term, 1895.

Suit was brought upon a policy of fire insurance.   Upon the argument of a demurrer to the declaration, the judge suggested to plaintiff's counsel that the declaration be so amended as to show that the proofs of loss required by the policy were furnished, or that they were waived.   Counsel failed to do this, and the demurrer was sustained.   This judgment was by the Supreme Court affirmed, with direction that the plaintiff be allowed to amend the declaration. 94 Ga. 170.   Thereupon plaintiff filed the following amendment:   Defendant executed the policy sued on, a copy of which is attached, whereby it insured the house belonging to Rosa Tutty (describing).   She became indebted to plaintiff $1,000 for money loaned, and to secure its repayment, caused said policy to be transferred to plaintiff, in the manner known as the New York standard mortgagee clause, copy of which is attached.   Her indebtedness has become due and payable and is unpaid, and was unpaid at the time of the commencement of this suit, and at the time the loss under the policy became payable.   On June 4, 1893, a fire occurred, by which the property insured was totally destroyed, without any violation of the policy, and the same became matured and the loss became payable to plaintiff thereunder.   "The notice required by the said company under its policy as the loss was given, and that within sixty days thereafter the said defendant, by its agent one W. F. Prioleau who is an adjuster for said company, after examination into the circumstances and values and the statement furnished by your petitioner of the contractor's estimate, caused to be made out a proof of loss upon a blank of said company under the requirements of said policy; by which proof of loss it appears that the actual cash value of the property so insured was, at the time of the fire, nineteen hundred and forty-eight dollars and eighty cents, $1,-

948.80; and that the said property was totally destroyed by fire as hereinbefore stated; and that the said defendant, by causing said proofs of loss to be prepared by its own agent and adjuster, waived any further or other proof by your petitioner." Afterwards plaintiff made the following further amendment: "That the said defendant kept the said proofs of loss until after the expiration of the said sixty days after the fire, and then returned the same to your petitioner and absolutely refused to pay the loss, saying that it would have to be adjusted in the courts; and your petitioner alleges that this conduct of the defendant constituted a waiver by the company to insist upon or require your petitioner to furnish the preliminary proof of loss." Defendant objected to the amendments, and demurred to the declaration as amended. The court allowed the amendments, and overruled the demurrer; to which ruling the defendant excepted by cross-bill. Upon hearing plaintiff's evidence, a nonsuit was granted, and plaintiff excepted.

The stipulations of the policy, so far as material, are as follows: "If fire occur, the insured shall give immediate notice of any loss thereby in writing, . . and, within sixty days after the fire, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire, the interest of the insured and of all others in the property, the cash value of each item thereof and the amount of loss thereon, all incumbrances thereon, . . by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of the fire. . . This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof, by any requirement, act or proceeding on its part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate

and satisfactory proof of the loss herein required have been received by this company;  .  .  and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be subject of agreement indorsed hereon or added hereto; and as to such provisions and conditions, no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto.  .  .  "  The amount of the policy was $1,000.  The fire occurred on June 4, 1893, and caused a total loss of the property.  The company was notified of this by letter, and responded that it would send an adjuster.  On June 23, plaintiff's attorney again wrote to the company, asking that the matter be attended to; and a short time afterwards, Prioleau called to see the attorney with regard to adjusting the loss.  He asked if any estimate had been made out by which they could arrive at a proper amount of the loss; whereupon the attorney delivered to him a written estimate of the value of the property when burned, together with a diagram of the building, both made by one Showalter, a contractor and builder, on June 9, 1893, at the instance of the plaintiff. Prioleau said he would take these and would fill out the regular proofs of loss; that the first thing necessary to do would be to submit it to Rosa Tutty.  No further evidence that the property had been burned was submitted to Prioleau, nor did he express any desire for any further proof of loss or of value.  He did make out the proof of loss on the blank form used by the company, to be executed by Rosa Tutty, carried it to her for that purpose, and returned to the attorney on the next day, reporting that she refused to sign. The attorney testified, that he was not requested, nor was any notice given to him, to make out any other proofs than those the adjuster himself undertook to make out.  "I naturally supposed it was all right.  He had the form made

out all right, and I was not requested to do anything.   He wanted to get her signature, but I was satisfied that he could not get that, because we then had a suit foreclosing a mortgage against this property; she was naturally unfriendly," etc.   On August 15, 1893, said attorney wrote to the local agents of the company:   "As we cannot obtain signature of assured, either to loss proof or to draft, we propose that you make draft payable to us direct, and we will give you our indemnity bond to cover any liability which you may sustain."   He wrote a similar proposal to the home office a month afterwards; but received no response to either communication.   No new proofs of loss were demanded by the company after Rosa Tutty refused to sign; no demand whatever was made for any additional proof; nor did the adjuster make any suggestion that proofs of loss ought to be made out by plaintiff as Rosa Tutty had not made them out.   The attorney supposed the value was adjusted all right, but was not paid on account of this complication of not being able to get the woman's signature; and that was the reason for making the proposal touching the bond of indemnity.   The attorney did not try to get her signature.

*G. B. Whatley* and *Saussy & Saussy*, for plaintiff.
*Denmark & Adams*, for defendant.